UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Eugene J. Cunningham, | ) C/A No. 9:12-2596-CMC-BM |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| Darlene Drew, Warden FCI; Inmate Work Committe, a/k/a Inmate Job Quoatas Assignment Memebers, FCI Bennettsville; T. Whitehead, Acting (CMC) Case Manger Coordinator, FCI Bennettsville; C. Harden, Case Manger, FCI Bennettsville; M. Holland, Case Manger, FCI Bennettsville; T. Smalls, Principal, FCI Bennettsville; G. Del Rel, Captain, FCI Bennettsville; W. Kinnion, Food Service Administrator, FCI Bennettsville, | ) |
| Defendants. | ) |

Plaintiff, Eugene J. Cunningham ("Plaintiff"), is a prisoner in the Federal Correctional Institution Bennettsville ("FCI Bennettsville") of the Bureau of Prisons ("BOP") in Bennettsville, South Carolina. Plaintiff is proceeding *pro se* and *in forma pauperis* under 28 U.S.C. §§ 1915 and 1915A, and brings this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971),[1] seeking monetary damages.

---

[1] In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A *Bivens* claim brought against a federal official for violation of a plaintiff's constitutional rights is analogous to a claim brought under 42 U.S.C. § 1983 against a state official in his or her personal capacity for violation of a plaintiff's constitutional rights while the defendant was acting under color of state law. Federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act "under color of state law." *Harlow v. Fitzgerald*, 457 U.S. 800, 814-20 (1982). Case law involving § 1983
(continued...)



Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint pursuant to the procedural provisions of 28 U.S.C. § 1915; 28 U.S.C. § 1915A; the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996);and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995); and *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983). Further, this Court is also required to liberally construe pro se documents, *Erickson v. Pardus*, 551 U.S. 89 (2007); *Estelle v. Gamble*, 429 U.S. 97 (1976), holding them to a less stringent standard than those drafted by attorneys, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

This mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. However, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Such is the case here.

## BACKGROUND

Plaintiff alleges that Defendants violated his due process and equal protection rights because the prison job to which Plaintiff was assigned on July 22, 2010, *i.e.* trust fund worker, was

---

[1](...continued)
claims is applicable in *Bivens* actions and vice versa. *See Farmer v. Brennan*, 511 U.S. 825, 839 (1994); *see also Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Turner v. Dammon*, 848 F.2d 440, 443-44 (4th Cir. 1988) (abrogated on other grounds by *Johnson v. Jones*, 515 U.S. 304 (1995); *Winfield v. Bass*, 106 F.3d 525, 529 (4th Cir. 1997)). *Bivens* claims, like § 1983 claims, address violations of constitutional rights by "persons." Under *Bivens*, "[A] plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).



taken away from him in July 2011. Plaintiff does not clearly set forth how or why he lost his job, but he does allege that it was not as a result of a disciplinary infraction. Plaintiff alleges that Defendants:

> in their individual capacity implemented policies and procedures that circumvent Plaintiff procedural due process under the due process an equal protection clause of the U.S. Constitution in capriciously, knowingly an intentionally sanction Plaintiff by taken Plaintiff privilege his job and pay as Trust Fund Worker and pay without affording Plaintiff procedures as required under Inmate Displine Program.

ECF No. 1, p. 9-10. Plaintiff asserts that BOP regulations, *i.e.* the Inmate Disciplinary Manual, and the United States Constitution should afford him at least as much due process as prisoners who are accused of disciplinary violations. Plaintiff also alleges that other BOP inmates in other institutions are afforded the protections of the BOP's national policy, which have been denied to Plaintiff. Plaintiff alleges that:

> Plaintiff, who was not charged any prohibit act did not come within ambit of the Inmate Displine Program, to have a sanction imposed on him for the lost of his job as promulgated or the lost of his pay as promulgated under the Inmate Trust Fund, defendants actions as the Inmate Job Quotas and assignment" also known as the Inmate Work Committee, policies and procedures implement in their individual compacity constitute a violation of Plaintiff due process an equal protection under the U.S. Federal Constitution.

ECF No. 1, p. 10. Plaintiff alleges that he attempted to exhaust his administrative remedies by filing a BP-9 and BP-10, to which he received responses denying his grievance. Plaintiff alleges that his BP-11 was filed on April 4, 2012, an extension of time for a response was granted without notice to Plaintiff, but, after more than six months, he has yet to receive a response from BOP's central office. Plaintiff alleges that such lack of response constitutes a denial under BOP regulations.



# DISCUSSION

In order to prevail on a due process claim, a plaintiff must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). In 1995, the United States Supreme Court decided *Sandin v. Conner*, 515 U.S. 472 (1995), in which the Court held that, with respect to a prisoner, a liberty interest implicating the Due Process Clause only exists where the prisoner can demonstrate that the challenged state or federal action would "inevitably affect the duration of his sentence" or impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 487. Examples of such "atypical and significant hardships" are transfer to a mental hospital and involuntary administration of psychotropic drugs. *See, e.g. Vitek v. Jones*, 445 U.S. 480, 493 (1980); *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). No such deprivation is alleged here. With respect to a property interest which could implicate the due process clause, it is well settled that an inmate has no federally protected right or interest in a prison job, or any job at all, while incarcerated. *Williams v. Farrior*, 334 F. Supp. 2d 898, 903-904 (E.D. Va. 2004). *See Cosco v. Uphoff*, 195 F.3d 1221, 1224 n.3 (10th Cir. 1999) (noting that an inmate has no property interest in his or her prison job); *Miller v. Benson*, 51 F.3d 166, 170 (8th Cir. 1995) (same); *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982) ("Any expectation that [Plaintiff] may have had of keeping his prison job does not amount to a property or liberty interest."); *James v. Jackson*, No. 08-144, 2009 U.S. Dist. LEXIS 8217, 2009 WL 291162, at * 8 (D.S.C. Feb. 4, 2009) ("[I]nmates do not have a liberty interest derived from the due process clause, nor do they have a property interest, in a specific job or any job at all while incarcerated"). Thus, not even a limited substantive or procedural due process right is implicated in the instant case,

4



based on Plaintiff's allegations, because Plaintiff cannot show that the loss of his prison job imposes any atypical or significant hardship on him, in relation to the ordinary incidents of prison life. Plaintiff fails to allege the necessary elements of a due process claim.

With respect to the Equal Protection Clause of the Fourteenth Amendment, this clause prohibits the states from denying any person within their jurisdiction the equal protection of the laws. Hence, the Fourteenth Amendment is not by its terms applicable to the federal government. However, actions by the federal government which classify individuals in a discriminatory manner could, under similar circumstances, violate the due process right embodied in the Fifth Amendment. Essentially, the right to equal protection is the right to be treated the same, legally, as others in the same situation, and if a law discriminates between one group of people and another, the government must have a rational basis for such disparate treatment. Further, a law that discriminates on the basis of a suspect classification, *i.e.* a distinction based on race, gender, ethnicity, disability, or another trait that has historically resulted in discriminatory treatment, is constitutionally permissible only if there is a compelling reason for the distinction. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

Generally, the question of whether the equal protection clause has been violated arises when a state or federal action grants a particular class of individuals the right to engage in an activity yet denies other individuals the same right. Additionally, the United States Supreme Court has recognized that it is possible to make an equal protection claim if one is singled out as a individual for "arbitrary and irrational treatment," with no rational basis for such disparate treatment, even if one is not being discriminated against as a member of a certain group. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir.



2005). In such a "class of one" equal protection claim, the plaintiff must allege facts to demonstrate that the defendant intentionally treated the plaintiff differently from other similarly situated persons, without any rational basis for the difference. However, when equal protection challenges arise in a prison context, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. In such instances, a prisoner claiming an equal protection violation must allege facts demonstrating "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination," and the court must determine whether the disparate treatment is "reasonably related to any legitimate penological interest." *Veney v. Wyche*, 293 F.3d 726, 730-32 (4th Cir. 2002).

"Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate government purpose.'" *Veney*, 293 F.3d at 731 (quoting *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)). In *Veney,* the plaintiff alleged that prison officials denied his requests to move from a single-occupancy cell into a double-occupancy cell because he was a homosexual male. Veney alleged that he was treated differently because of his gender and sexual preference. The Fourth Circuit held that Veney's case did not involve a fundamental right, and he did not allege that he was a member of a suspect class. *Id.* As in *Veney*, Plaintiff's claim in the instant case does not involve a fundamental right, and Plaintiff does not allege that he is a member of a suspect class. *See Moss v. Clark*, 886 F.2d 686, 690 (4th Cir. 1989) ("[P]risoners are not a suspect class," and "the status of incarceration is neither an immutable characteristic, nor an invidious basis of classification.").

6



Moreover, Plaintiff fails to show that the Defendants have treated Plaintiff differently from others with whom he is similarly situated. Plaintiff compares himself to inmates who have been charged with disciplinary violations and who face the possible loss of good time credits which would affect the duration of their sentences. Plaintiff argues that inmates facing disciplinary action are entitled to 24 hours advance notice of the charges against them, and a right to call witnesses and to present documentary evidence in their defense. However, Plaintiff's loss of his prison job and his loss of the discretionary privilege to earn work-related credits and/or performance pay for doing that job is not a similar situation to another inmate's conviction for a disciplinary violation and the other inmate's resulting loss of a constitutionally protected liberty interest in earned good time credits. There is a rational basis in the BOP's development and implementation of different policies and procedures for handling these different situations. Plaintiff has not only failed to allege that Defendants lacked any legitimate penological interest in applying such policies and procedures to him, he has failed to show that he has been treated arbitrarily or differently from any other inmate who has lost a prison job. Plaintiff's conclusory allegation that inmates in other federal institutions are afforded protections under the BOP's national policy which have been denied to Plaintiff simply misses the mark. Just as at FCI Bennettsville, actions at other BOP institutions concerning prisoners' jobs and pay would be governed by a different program statement (*i.e.*, *Inmate Work and Performance Pay*, BOP Program Statement No. 5251.06, Oct. 1, 2008, for example), than actions concerning inmate discipline (which would be governed by *Inmate Discipline Program*, BOP Program Statement No. 5270.09, July 8, 2011, for example).

Thus, Plaintiff fails to allege the necessary elements of an equal protection claim, *i.e.* that he and a similarly situated comparator were treated differently with respect to a constitutionally

7



protected right or interest, that the different treatment was the result of Defendants' discrimination, and that Defendants' disparate treatment was not reasonably related to any legitimate penological interest. While Plaintiff may have some further prison administrative remedies that he may pursue, he may not proceed under *Bivens* because he "would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Veney*, 293 F.3d at 730.

## RECOMMENDATION

Accordingly, it is recommended that the Court dismiss the Complaint in this case, without prejudice and without issuance and service of process. Plaintiff's attention is directed to the important notice on the next page.

_____
Bristow Marchant
United States Magistrate Judge

September 28, 2012
Charleston, South Carolina

8



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636 (b) (1); Fed. R. Civ. P. 72 (b); *see* Fed. R. Civ. P. 6 (a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636 (b) (1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

