IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

Eugene Jerome Cunningham, #02433-135, )
) CIVIL ACTION NO. 9:12-2596-RMG-BM
        Plaintiff, )
)
v. )
) **REPORT AND RECOMMENDATION**
Darlene Drew, Warden, FCI Bennettesville )
and G. Del Rel, Captain, FCI Bennettesville, )
)
        Defendants. )
_____)

        This action has been filed by the Plaintiff, pro se, pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).[1] Plaintiff, an inmate with the Federal Bureau of Prisons (BOP), alleges violations of his constitutional rights by the named Defendants.

        The Defendants filed an amended motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on August 1, 2013. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on August 2, 2013, advising Plaintiff of the importance of a motion for summary

---

[1] In Bivens, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983. However, federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of *state* law. See Harlow v. Fitzgerald, 457 U.S. 800, 814-820 (1982). Harlow and progeny indicate that case law involving § 1983 claims is applicable in Bivens actions and *vice versa*. Farmer v. Brennan, 511 U.S. 825 (1994). See also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Turner v. Dammon, 848 F.2d 440, 443-444 (4th Cir. 1988); Osabutey v. Welch, 857 F.2d 220, 221-223 (4th Cir. 1988); and Tarantino v. Baker, 825 F.2d 772, 773-775 (4th Cir. 1987), cert. denied, North Carolina v. Tarantino, 489 U.S. 1010 (1989).



judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. After receiving an extension of time to file his response, Plaintiff filed a memorandum in opposition to the Defendants' motion on October 15, 2013.

Defendants' motion is now before the Court for disposition.[2]

**Background and Evidence**

Plaintiff alleges in his amended complaint that on or about February 2010 his custody status was changed from maximum to medium, and he was transferred to the Federal Correctional Institution in Bennettsville, South Carolina. Plaintiff alleges that, following his transfer, he was "denied jobs in the commissary, recreation and other jobs [throughout] the Institution as well as other program participation", although other inmates with the same custody level are able to participate in these jobs and programs. Plaintiff alleges that he is similarly situated with these other medium security inmates, and that his equal protection rights are being violated by the Defendants because he is not being afforded the same "jobs and privileges and programs as all of the inmates who [have] the same custody and [are] situated the same as Plaintiff". Plaintiff seeks monetary damages. See generally, Plaintiff's Amended Complaint.

In support of summary judgment in the case, the Defendants haves submitted numerous exhibits, both as part of their amended motion for summary judgment and as attachments to the original motion for summary judgment filed July 14, 2013. These exhibits include an affidavit

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

2



from the Defendant Darlene Drew, who attests that from May 2008 to November 2012, she was the Warden at the Federal Correctional Institution (FCI) in Bennettsville, but that she is currently employed as the Warden at the United States Penitentiary (USP) in Atlanta, Georgia. Drew attests that she is familiar with the Plaintiff, who is an inmate incarcerated at FCI Bennettsville, where he is serving a life sentence. Drew attests that, as Warden at FCI Bennettsville, she had general oversight responsibility for the operation of the Institution, but was not involved in every decision concerning day to day management of individual inmates or the operations of specific departments.

Drew further attests that BOP Program Statement 5251.05 [Inmate Work and Performance Pay] provides that an inmate's work assignment is made with consideration of the institution's security and operational needs, and that in line with this Program Statement and in order to further enhance the safety and security of the Institution, local procedures have been established at each federal facility that prohibit inmates convicted of certain offenses as well as inmates serving life sentences from being assigned to work any detail that required them to work early, late or overtime shifts. Drew attests that, pursuant to these requirements, and because Plaintiff is serving a life sentence, he is limited to work assignments that require his presence from 7:30 a.m. to 3:30 p.m. Drew attests that while this requirement means that there are some jobs and programs Plaintiff may be prohibited from working or enrolling in because the work or program hours extend past 3:30, there are other jobs and vocational training programs and courses available to him, and that he simply needs to request a particular job assignment from his Unit Manager or a program through the Education Department. Further, and significantly for purposes of Plaintiff's claim, Drew attests that the Plaintiff is not treated any differently than other medium custody inmates at FCI Bennettsville who are serving life sentences, and that Plaintiff has not been "singled out" for the conditions that

3



have been placed on his work and program eligibility.

Drew attests that while she was the Warden at FCI Bennettsville, she and the executive staff at FCI Bennettsville implemented local procedures that require rotation of inmate assignments for every inmate after one year in a particular job assignment, except for those inmates assigned to specialized trade jobs, who are required to rotate job assignments every two years. Drew attests that this policy allows inmates the opportunity to acquire skills in different jobs that will assist in post-release employment. Drew attests that no inmate is entitled to a specific work assignment, and that an inmate's assignment is made in consideration of the institution's security and operational needs. Drew attests that this policy was implemented institution wide, and that Plaintiff was not singled out for any treatment under this policy from what any other inmate in his security status received. Drew attests that Plaintiff was assigned to the commissary work detail from June 22, 2010 through July 21, 2011, that after a year in commissary Plaintiff was assigned to a new job in the laundry, and that records also show that Plaintiff was assigned to commissary again and now is an orderly in his housing unit.

Finally, Drew attests that on December 1, 2011 she responded to an Inmate Request to Staff Member form from the Plaintiff in which Plaintiff requested to be restored to his job in the commissary. Drew attests that she explained in her response that work assignment rotations allow inmates the opportunity to acquire skills in different job assignments. See generally, Drew Affidavit.

The Defendant Gerald Del Ray has provided an affidavit wherein he attests that he is currently the acting Unit Manager at FCI Bennettsville, but that during the time period set forth in the Complaint he was a Captain at FCI Bennettsville. Del Ray attests that he is familiar with the Plaintiff, who is an inmate incarcerated at FCI Bennettsville, serving a life sentence. Del Ray attests



4

that, as a Captain at FCI Bennettsville, he was head of the Correctional Services Department and was responsible for institutional security, inmate conduct and discipline, inmate work, control of hazardous tools and material, safety, sanitation, control and use of institutional vehicles, and key control. Del Ray attests to the same facts concerning how the prison job program works as did Drew in her affidavit, that Plaintiff has never been singled out for any individual restrictions or requirements that are not also applied to other inmates of his security status, and that he has never violated Plaintiff's equal protection rights. See generally, Del Ray Affidavit.

In addition to their affidavits, the Defendants have provided numerous other exhibits, including Sentence Monitoring Computation Data showing that Plaintiff is serving a life sentence, copies of Plaintiff's inmate work history, copies of the relevant program statements, copies of Defendants' responses to Plaintiff's discovery requests, relevant BOP memoranda and manuals, and copies of responses to Plaintiff's request for administrative remedies. See generally, Defendants' Exhibits.

As attachments to his response in opposition to Defendants' motion, Plaintiff has also submitted numerous exhibits, including copies of some exhibits that have also been submitted by the Defendants. Plaintiff's exhibits confirm that he is serving a life sentence. Plaintiff has also submitted a copy of a BOP Program Statement dated January 29, 1999 (No. 1040.04), titled "Non-Discrimination Toward Inmates". This program statement provides, inter alia, that the expected result of this program is that assignments in housing, work and programs will be available to inmates on an equal opportunity basis. See Plaintiff's Exhibit 7. Plaintiff's exhibits also include copies of relevant BOP memoranda to wardens recommending that inmates with a history of escape or life terms should not work early or late nights/overtime shifts. See Plaintiff's Exhibits 9 and 10.



**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

First, it is well settled that an inmate has no federally protected right or interest in a prison job, or any job at all, while incarcerated. Williams v. Farrior, 334 F. Supp. 2d 898, 903-904 (E.D. Va. 2004); see Cosco v. Uphoff, 195 F.3d 1221, 1224 n.3 (10th Cir. 1999) [Noting that an inmate has no property interest in his or her prison job]; Miller v. Benson, 51 F.3d 166, 170 (8th Cir. 1995) (same); James v. Quinlan, 866 F.2d 627, 630 (3d Cir. 1989); Garza v. Miller, 688 F.2d 480, 486 (7th Cir. 1982) ["Any expectation that [Plaintiff] may have had of keeping his prison job does



not amount to a property or liberty interest."]; James v. Jackson, No. 08-144, 2009 WL 291162,at * 8 (D.S.C. Feb. 4, 2009) ["[I]nmates do not have a liberty interest derived from the due process clause, nor do they have a property interest, in a specific job or any job at all while incarcerated"]. Therefore, Plaintiff's failure to obtain or be assigned to a particular job that he might want is not a basis for a viable Bivens constitutional claim.

Concededly, while Plaintiff has no right to any particular job, or to any particular security classification, if the evidence before the Court is sufficient to give rise to genuine issue of fact as to whether he has been treated in a discriminatory manner, then it is possible he could have a constitutional claim. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1982)["[A]ll persons similarly situated should be treated alike"]. The United States Supreme Court has also recognized that it is possible to make out an equal protection claim if one is singled out as an individual for "arbitrary and irrational treatment," with no rational basis for such disparate treatment, even if one is not being discriminated against as a member of a certain group. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Willis v. Town of Marshall, N.C., 426 F.3d 251, 263 (4th Cir. 2005). In such a "class of one" equal protection claim, in order to survive summary judgment a plaintiff must have evidence to demonstrate that the defendant intentionally treated the plaintiff differently from other similarly situated persons, without any rational basis for the difference. Cf. Moss v. Clark, 886 F.2d 686, 690-691 (4th Cir. 1989)[Finding prisoner equal protection claim requires showing that Plaintiff is similarly situated and that unequal treatment is not rationally related to a legitimate governmental purpose].

However, when equal protection challenges arise in a prison context, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to



7

operate their facilities in a safe and secure manner. Hence, in order to avoid summary judgment a prisoner asserting an equal protection violation must first have evidence demonstrating "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination," and, if so, the court must then determine whether the disparate treatment is "reasonably related to any legitimate penological interest." Veney v. Wyche, 293 F.3d 726, 730-32 (4th Cir. 2002); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001); Moss, 886 F.2d at 690-691. Plaintiff's claim fails under both of these criteria.

With respect to the first requirement Plaintiff must meet to establish his claim, Plaintiff has failed to present any evidence to show that he is being treated differently from any other similarly situated inmates. The documentary evidence shows that the policy at issue is in effect system-wide at the prison, and both Defendants also attest in their affidavits that *all* medium security inmates at FCI Bennettsville who are serving life sentences are subject to the same rules and regulations as is the Plaintiff. Plaintiff has presented no evidence whatsoever to show otherwise; indeed, Plaintiff does not even appear to argue otherwise. Plaintiff's claim in the case at Bar does not involve a fundamental right, and Plaintiff does not allege that he is a member of a suspect class. See Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989) ("[P]risoners are not a suspect class," and "the status of incarceration is neither an immutable characteristic, nor an invidious basis of classification."). Rather, he simply argues that he should be treated the same as other medium security inmates who are *not* serving life sentences. Plaintiff has no constitutional right to any such classification. See Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994)[Constitution vests no liberty interest in a particular custody status so long as the degree of confinement is within the sentence imposed]; Marchesani v. McCune, 531 F.2d 459, 461-461 (10th Cir. 1976)[Security classifications

8



are "a necessary tool in the management and control of the penal and correctional institution" and as such, "lie [ ] within the sound discretion" of the agency].

The evidence before the Court shows that Plaintiff is a medium security inmate serving a life sentence, who is being treated the same as all other medium security inmates at FCI Bennettsville who are serving life sentences. See Defendants' Exhibit 2, Nos. 3-7, 9, 12, 16-17, 24; Defendants' Exhibit 3, Nos. 3-4, 8, 10-11, 15, 18, 20-21; Defendants' Exhibit 10, Nos. 12, 14, 16-19; Defendants' Exhibit 12, Nos. 21, 32. Because Plaintiff has failed to present any evidence to show that he is being treated any differently than similarly situated inmates, his equal protection claim fails. Cf. McKubbin v. Pettiford, No. 08-3248, 2009 WL 3245486, at * 6 (D.S.C. Oct. 1, 2009)[Finding that "plaintiff's claim fails because he cannot make any initial showing that he is similarly situated to the inmates with whom he attempts to compare himself"]; see also Moody v. Daggett, 429 U.S. 78, 88, n. 7 (1976)[Noting that federal prisoners have no constitutionally protected interest in prison classification or rehabilitative programs]; see also Hoptowit v. Ray, 682 F.2d 1237, 1254-1255 (9th Cir. 1982)[Prisoner serving criminal sentences have no constitutional right to rehabilitation while in prison]; Abdul-Akbar v. Dept. of Corrections, 910 F.Supp. 986, 1002 (D.Del. 1995)[No right to drug treatment, employment, or other rehabilitation, education or training programs while in prison].

In addition to failing to present any evidence of disparate or unequal treatment in the policy at issue, Plaintiff has also failed to show that, even if there *was* evidence of unequal or discriminatory treatment, his security classification is not reasonably related to a legitimate penological interest. "Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid

9



and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate government purpose.'" Veney, 293 F.3d at 731 (quoting Heller v. Doe, 509 U.S. 312, 319-20(1993)); see also Turner v. Safley, 482 U.S. 79, 89 (1987)[Prison regulation that impinges on an inmate's constitutional rights is nevertheless valid if it is reasonably related to legitimate penological interests]. Here, the evidence before the Court shows that the policy that prohibits inmates with life sentences from working early, late, or overtime was implemented for security purposes, and had nothing to do with the Plaintiff individually, or with any attempt to single Plaintiff out for separate and unequal treatment from other similarly situated inmates. Inmates serving life sentences represent greater security and escape risks due to their "nothing to lose" status, and are routinely subjected to higher security restrictions designed to reduce opportunities for escape, to include not allowing work on early, late or overtime shifts, work in areas with easier access to front or rear entrances, or work involving shipping. See Defendants' Exhibits (Court Docket Nos. 67-1; 67-2 (Nos. 3, 9 and 24); 66-3 (Nos. 3, 6-8); 66-4; 66-5).

Hence, no constitutional violation is shown in the evidence before the Court, even assuming a discriminatory policy had been shown. Chevron U.S.A. v. Natural Res. Def. Cil., Inc., 467 U.S. 837, 844 (1984)[Agency's decisions are not to be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to the statute]. Therefore, this claim is without merit. See also Slezak, 21 F.3d 590 [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)



["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."].

Finally, a fair interpretation of the arguments set forth in Plaintiff's brief for why he believes he is entitled to have the same job and program opportunities during the same time periods as medium security inmates who are not serving a life sentence is because he believes he is entitled to such a custody status under the policies and procedures in effect at the prison, that the Defendants did not have the authority to change his classification as they did, and that his classification is not in compliance with BOP policies and procedures. However, the evidence (including Plaintiff's own exhibits) shows that the policy in effect with respect to medium security inmates serving life sentences was specifically recommended by the BOP for implementation by wardens as well as internally at the prison. See Plaintiff's Exhibits 9-11. In any event, even assuming a question of fact was present with respect to this issue (which the undersigned expressly does *not* find), a violation of a prison policy or procedure (even assuming one had occurred in this case) is not in and of itself a compensable claim in a Bivens action. See Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under the Fourteenth Amendment); see also Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."]; cf. Riccio, 907 F.2d at 1469 [if state law grants more



procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue] (§ 1983 case). This argument is therefore without merit.

## **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

October 29, 2013
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

